# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **JEFF W. WORTHEAN,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )  Case No. CIV-17-297-JHP-SPS |
| | ) |
| **COMMISSIONER of the Social** | ) |
| **Security Administration,** | ) |
| | ) |
| **Defendant.** | ) |

## REPORT AND RECOMMENDATION

The claimant Jeff W. Worthean requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision should be REVERSED and the case REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the

national economy[.]" *Id.* § 423 (d)(2)(A).  Social security regulations implement a five-step sequential process to evaluate a disability claim.  *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied.  *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997).  Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).  The Court may not reweigh the evidence or substitute its discretion for the Commissioner's.  *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991).  But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1.  If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity (RFC) to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was forty-five years old at the time of the administrative hearing (Tr. 36). He completed the eleventh grade, and has worked as a brick layer and sandblaster (Tr. 17, 181). The claimant alleges that he has been unable to work since July 1, 2013, due to gout in his hands and feet, pinched nerve in his back, numbness in legs, rheumatoid arthritis, and spinal degeneration (Tr. 17, 180).

### Procedural History

On June 23, 2014, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His applications were denied. ALJ Lantz McClain held an administrative hearing and determined that the claimant was not disabled in a written opinion dated May 24, 2016 (Tr. 11-19). The Appeals Council denied review; thus, the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), *i. e.*, he could lift/carry twenty pounds occasionally and ten pounds frequently and stand/walk at least six hours in an eight-hour

workday, with no more than occasional stooping (Tr. 14). The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work in the regional and national economy he could perform, *i. e.*, arcade attendant and parking lot attendant (Tr. 17-18).

## Review

The claimant contends that the ALJ erred by: (i) failing to account for all his impairments in formulating the RFC, and (ii) failing to properly identify work he could perform at step five. The undersigned Magistrate Judge agrees with the claimant's contention that the ALJ failed to properly assess his RFC, and the decision of the Commissioner should therefore be reversed and the case remanded for further proceedings.

The ALJ found that the claimant had the severe impairments of borderline obesity, degenerative disc disease lumbar spine, and generalized polyarthralgias, as well as the nonsevere impairment of Hepatitis C (Tr. 13-14). As to the claimant's gout at step two, the ALJ made no explicit finding as to severity, but instead asserted that it only flared up at wide intervals and would not usually affect the claimant's work, that proper treatment would mean it caused fewer problems, and that when it did affect him, normal sick leave of one day per month as provided by the "usual schedule for sick leave" would accommodate this (Tr. 13-14). The relevant medical evidence reveals that the claimant complained of chronic low back pain and was assessed in November 2013 with degenerative disc disease at L5/S1 and multilevel spondylosis, but that he moved his extremities well and had a normal gait (Tr. 262-264). This was further supported by an x-ray of the lumbosacral spine perform in July 2013 (Tr. 307). In September 2014 the

claimant again assessed with chronic joint pain, most likely osteoarthritis (Tr. 387). The claimant underwent a number of injections to manage his back pain (Tr. 411-414, 444). A February 2015 x-ray revealed spondylitic changes most pronounced at L4-5 and L5-S1 (Tr. 479). The patient reported that an injection on June 30, 2015 actually caused him more pain, instead of decreasing it (Tr. 444). Treatment notes from Advanced Pain Specialists of Tulsa record abnormal musculoskeletal, back, and neurological findings, including lumbar paraspinal muscular tenderness, decreased range of motion of the back, and muscle spasm of the back (Tr. 419). On October 19, 2019, the claimant underwent an MRI of the lumbar spine, which revealed: at L3-4, mild degenerative disc desiccation and disc space narrowing, posterior shallow broad-based disc bulge, mild ligamentum flavum hypertrophy and facet arthropathy, and mild narrowing of the right neural foramina without significant left neural foraminal narrowing; at L4-5, posterior broad-based disc osteophyte complex and disc bulge, with ligamentum flavum hypertrophy and facet arthropathy (Tr. 538). On December 16, 2015, the claimant was noted to have decreased range of motion of the spine, 4/5 muscle strength, and a positive straight leg raise test (Tr. 422). A March 11, 2016 treatment note likewise indicated decreased range of motion of the lumbosacral spine, and perilumbar tenderness without focal neurologic changes (Tr. 545).

On May 30, 2014, the claimant was noted to have gout in both hands, but that he had not had medications for the gout in four months (Tr. 294). He continued to report pain in his hands and feet every day, noting he could hardly sleep at night due to the pain (Tr. 341). A September 2014 treatment note indicates that the claimant's gout was controlled with medication at the time (Tr. 387). Later notes indicate that the claimant

underwent treatment for Hepatitis C, during which his hands did not bother him (Tr. 458). After the Hepatitis C treatment was concluded, he was treatment for continued pain and swelling in both hands (Tr. 458).  A January 22, 2016 x-ray revealed a healed left fifth distal metacarpal fracture with mild posttraumatic deformity, as well as nonunion of the left ulnar styloid avulsion versus unfused secondary ossification center (Tr. 539).  A March 11, 2016 treatment note further reveals a restricted range of motion of both wrists, as well as bilateral tenderness, and that the hands were tender, although he had "fairly good fist and grip bilaterally" (Tr. 545-546).  At this same encounter, Physician's Assistant Amy Harrison noted that the claimant's x-rays showed mildly reduced MCP joint space, and that there was "significant loss of cartilage at the radiocarpal joints bilaterally" (Tr. 546).

On September 29, 2014, Dr. Johnson Gourd conducted a physical examination of the claimant (Tr. 369).  Dr. Gourd found the claimant had 5/5 strength in all extremities, as well as full painless range of motion in all extremities and his back, although he did have some pain on sitting (Tr. 370).  Dr. Gourd specifically noted that the claimant had full range of motion of all digits (Tr. 370).  He assessed the claimant with back pain, full range of motion, no radiculopathy, but clearly has pain with sitting, and stated that an MRI would be beneficial to further assess the lumbar spine (Tr. 370).  Additionally, he assessed the claimant with gout, noting that it was currently asymptomatic (Tr. 370).

Two state reviewing physicians determined that the claimant's impairments were nonsevere (Tr. 71-72, 88-89).

In his written opinion, the ALJ summarized the claimant's hearing testimony, as well as some of the medical evidence in the record.  Notably, the ALJ did not, however,

include the March 2016 treatment notes that include findings related to reduced range of motion of the back and wrists (Tr. 14-17).  After summarizing most of the medical record, the ALJ noted the state reviewing physician findings of no severity but stated that the claimant's impairments in combination were "reasonably severe" (Tr. 17).  He then found, *inter alia*, that the claimant's gout appeared controlled by medication, and that he only had trouble putting on sock and shoes but could still prepare meals, drive a car, and do his own shopping (Tr. 17).  The ALJ thus concluded that the claimant was capable of the above-stated RFC, *i. e.*, light work but only occasional stooping (Tr. 14, 17).

The claimant asserts that the ALJ erred in formulating his RFC, and the undersigned Magistrate Judge agrees.  As an initial matter, the undersigned Magistrate Judge notes that although the ALJ *did* include one limitation ("occasional stooping") related to the claimant's physical impairments in the RFC, the ALJ has connected no evidence in the record to instruct this Court as to how such a limitation accounts for each of the claimant's severe impairments, *i. e.*, borderline obesity, degenerative disc disease of the lumbar spine, and generalized polyarthralgias.  *See Timmons v. Barnhart*, 118 Fed. Appx. 349, 353 (10th Cir. 2004) (finding the ALJ should have "explained how a 'severe' impairment at step two became 'insignificant' at step five."); *Hamby v. Astrue*, 260 Fed. Appx. 108, 112 (10th Cir. 2008) ("In deciding Ms. Hamby's case, the ALJ concluded that she had many severe impairments at step two.  He failed to consider the consequences of these impairments, however, in determining that Ms. Hamby had the RFC to perform a wide range of sedentary work.").  This was a significant omission here because these impairments can have limitations that directly impact the claimant's ability to perform work.  Instead, the ALJ

should have explained why the claimant's severe impairments did not call for corresponding limitations in the RFC. *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as the significantly probative evidence that he rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir 1984). Moreover, the ALJ failed to properly assess the combined effect of all the claimant's impairments – both severe and nonsevere – in assessing his RFC. Both of these errors require reversal. *See, e. g., Grotendorst v. Astrue*, 370 Fed. Appx. 879, 884 (10th Cir. 2010) ("[O]nce the ALJ decided, without properly applying the special technique, that Ms. Grotendorst's mental impairments were not severe, she gave those impairments no further consideration. This was reversible error."). *See also McFerran v. Astrue*, 437 Fed. Appx. 634, 638 (10th Cir. 2011) (unpublished opinion) ("[T]he ALJ made no findings on what, if any, work-related limitations resulted from Mr. McFerran's nonsevere mood disorder and chronic pain. He did not include any such limitations in either his RFC determination or his hypothetical question. Nor did he explain why he excluded them. In sum, we cannot conclude that the Commissioner applied the correct legal standards[.]"). This is particularly significant where, as here, the treatment notes related to the claimant's gout suggest additional limitations that should have been reflected in the RFC.

The ALJ was required to evaluate for controlling weight any opinions as to the claimant's functional limitations expressed by his treating physicians. The ALJ's analysis, as described above, falls short in this case. Although the ALJ noted the proper analysis at

the outset of step four, he failed to properly apply it when he ignored the evidence in the record related to his reduced range of motion of the lumbar spine and wrists. This was an improper assessment where, as here, the ALJ rejected the state physicians' findings but failed to explain why the claimant's documented reduced range of motion and continued back and wrist pain nevertheless enabled him to perform light work, with its attendant total sitting/standing requirements (particularly where the consultative examiner even suggested further limitations related to sitting). *Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001) (A reviewing court is "'not in a position to draw factual conclusions on behalf of the ALJ.'"), *quoting Prince v. Sullivan*, 933 F.2d 598, 603 (7th Cir. 1991). *See also Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-386 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper.") [citations omitted].

Because the ALJ failed to properly assess the claimant's RFC, the Commissioner's decision should be reversed and the case remanded to the ALJ for further analysis of *all* the evidence related to the claimant's impairments. If such analysis on remand results in any adjustment to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether he is disabled.

## Conclusion

The undersigned Magistrate Judge finds that correct legal standards were not applied by the ALJ and that the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge RECOMMENDS that the ruling of the Commissioner of the Social Security Administration be REVERSED and the case REMANDED for further proceedings not inconsistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 28th day of February, 2019.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**